UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAFE DUNN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1393-X |
| | § | |
| SOUTHWEST AIRLINES CO. et al., | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Lafe Dunn sued Southwest Airlines Co. and Southwest Airlines Co. Voluntary Separation Program 2020 (collectively, "Southwest") for denying him benefits. The parties cross-move for summary judgment. [Doc. Nos. 74, 77]. For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Southwest's motion for summary judgment. The Court **DENIES** Dunn's motion for summary judgment.

### I. Factual Background

Dunn worked as a Southwest pilot for around 14 years. In May 2020, Dunn began experiencing "mental health issues" and started "drink[ing] more than he thought wise in light of his position as a pilot."[1] On May 25, 2020, Dunn reported those issues to a Southwest Airlines Pilot Association ("SWAPA") representative and entered a substance abuse treatment program.

Dunn then took a leave from his piloting duties. There's conflicting evidence about the type of leave he took. For instance, his union representative described the

---

[1] Doc. No. 1 at 3.

1

leave as "medical leave."[2]  But Dunn's superior, Joe Wahl, instructed that Southwest should "exhaust [Dunn's] sick leave" first before putting him on medical leave.[3]

In any event, just days later, on June 1, 2020, Southwest responded to the COVID-19 pandemic by ridding itself of pilots.  It created a Voluntary Separation Program ("VSP") whereby pilots who voluntarily resigned would receive specified "separation pay and benefits."[4]  Because the VSP provided significant severance payments, it would have been a good deal for Dunn.  But Southwest only offered the VSP to "Pilots on active status at Southwest as of June 1, 2020."[5]

Southwest didn't define "active status" in the VSP, but it gave its "Board of Trustees . . . . the sole authority to interpret the Plan and . . . complete discretion and authority to construe any uncertain, ambiguous Plan term."[6]  On June 9, 2022, the Board of Trustees ("the Board") issued a FAQ interpreting "active status" to exclude those pilots who have "been on a leave, or ha[ve] been absent from work due to an illness or injury and, as of June 1, 2020, that leave or that absence is expected in the Company's reasonable discretion to continue so that the total amount of leave/absence would be six or more continuous months."[7]

On July 15, 2020, Dunn applied to participate in the VSP.  His superior, Joe Wahl, allegedly told Dunn that Dunn would "[o]ne hundred percent . . . . get the VSP

---

[2] Doc. No. 79 at 77.

[3] Doc. No. 75 at 56.

[4] Doc. No. 79 at 13.

[5] *Id.* at 22.

[6] *Id.* at 15.

[7] *Id.* at 43.

2

if [he] simply ma[de] the election."[8]  Yet Southwest denied Dunn's application.  Dunn requested that Southwest reconsider, contending that his "Last Day Paid" was June 20, 2020 and that his "medical disability start date" was June 21, 2020, allegedly rendering him "active on 6/1/2020."[9]  Southwest denied that request for reconsideration, contending that Dunn really began his "leave of absence on May 26, 2020," rendering him "on inactive status as of June 1, 2020."[10]  Dunn appealed, citing the same reasons as his first request for reconsideration.  Southwest's Board rejected Dunn's argument because "[t]he last day paid is different from the last day worked . . . Pay always trails behind the work performed[] [s]o, payments dates don't reflect the dates that a leave of absence begins."[11]

Dunn sued under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that (1) Southwest VSP improperly denied him benefits and (2) Southwest breached its fiduciary duty to him.  The parties now cross-move for summary judgment.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]  "[T]he mere existence of *some* alleged factual dispute

---

[8] Doc. No. 75 at 11.

[9] Doc. No. 1-10 at 1.

[10] Doc. No. 1-11 at 1.

[11] Doc. No. 1-13 at 1.

[12] FED. R. CIV. PROC. 56(a).

3

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact."[13]

### III. Analysis

The Court considers Dunn's (A) denial-of-benefits and (B) breach-of-fiduciary-duty claims in turn.

#### A. Denial-of-Benefits Claim

Dunn sues Southwest VSP under 29 U.S.C. § 1132(a)(1), alleging that it improperly denied him benefits. Because the VSP provides the Board with discretion to interpret its provisions, the parties agree on the appropriate framework: "When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion."[14] That review requires "a two-step analysis."[15] First, a court "must determine whether the administrator's interpretation was legally correct."[16] Second, if the interpretation was incorrect, then a court "must determine whether the administrator's interpretation was an abuse of discretion."[17]

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

[14] *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc); *see also* Doc. No. 85 at 6 ([T]he VSP plan documents give the Administrator interpretive discretion, and [] the Court's review is therefore under an abuse of discretion standard[.]").

[15] *Singletary v. United Parcel Serv.*, 828 F.3d 342, 346 (5th Cir. 2016).

[16] *Id.* at 347.

[17] *Id.*

4

The Court thus begins by analyzing whether the Board's interpretation of the VSP was correct. The Board interpreted "active status" to mean that a pilot is "inactive" if he "has been on a leave, or has been absent from work due to an illness or injury and, as of June 1, 2020, that leave or that absence is expected in the Company's reasonable discretion to continue . . . [for] six or more continuous months."[18] To determine whether that interpretation is correct, the Court must ascertain the "plain meaning of the [VSP],"[19] and "[d]ictionary definitions can [] prove helpful" in that inquiry.[20]

"Inactive" means "being out of use" or "not performing or available for [] duties."[21] The Board's interpretation that "inactive" pilots are those who are "absent from work" and whose absence will likely last "six or more [] months" falls squarely within that definition.[22] Thus, the Board's interpretation is correct, and it properly denied Dunn's VSP application.

Dunn disagrees, contending that, on June 1, 2020, he was on "sick leave."[23] Dunn makes three arguments to show that his purported "sick leave" rendered him an "active" pilot.

---

[18] Doc. No. 79 at 43.

[19] *Nickel v. Estate of Estes*, 122 F.3d 294, 298 (5th Cir. 1997).

[20] *Meyers v. Tex. Health Res.*, No. 3:09-CV-1402-D, 2011 WL 1238923, at *4 (N.D. Tex. Apr. 4, 2011) (Fitzwater, J.).

[21] *Inactive*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/inactive (last visited January 20, 2023).

[22] Doc. No. 79 at 43; *cf. Meadows v. Am. Airlines, Inc.*, No. 10-22175-CIV, 2011 WL 1102774, at *2 (S.D. Fla. Mar. 24, 2011) ("Mr. Meadows was an active airline pilot with AA from October of 1991 until May of 2003 when he ceased work due to stress, irritability, and difficulty sleeping."), *aff'd*, 520 F. App'x 787 (11th Cir. 2013).

[23] Doc. No. 76 at 21.

First, Dunn notes that, in July 2020, he received various insurance benefits. And under Section 14(A)(1) of the collective bargaining agreement between Southwest and the SWAPA union (the "CBA"), he argues, only pilots "in the active service of the Company" are eligible for those benefits.[24] Thus, the argument goes, Dunn's July paycheck demonstrates he was on sick leave throughout June 2022 and, by his logic, an "active" pilot on June 1, 2020. But Dunn omits a critical portion of Section 14(A)(1). Section 14(A)(1) actually says that those benefits are available to pilots who are "in the active service of the Company . . . ***or [who are] being held out of service during . . . the first thirty (30) days of leave of absence without pay***."[25] Thus, the CBA distinguishes pilots in active service from those—like Dunn— on a leave of absence. In other words, even assuming that Dunn was on "sick leave," the CBA itself demonstrates that Dunn was not an active pilot.[26]

Second, Dunn analogizes to military pilots, saying that "military pilots who are sick are still on active duty."[27] But his citation for that proposition merely explains how soldiers earn leave each month—it doesn't characterize their status while on that leave.[28]

---

[24] Doc. No. 75 at 102.

[25] *Id.* (emphasis added).

[26] Because the CBA hurts Dunn's position, the Court need not decide whether it is proper to consider the CBA as being outside the administrative record. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc) ("Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions."), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

[27] Doc. No. 85 at 20.

[28] *Id.* at 20 n.19 ("Active duty Soldiers earn 2.5 days of annual (chargeable) leave for each month of service[.]" (cleaned up)).

Third, Dunn contends that caselaw supports his position, but his cases are inapposite. For instance, one case he cites involved a situation in which the term "'active employee' [was] specifically defined in the Plan."[29] But the VSP doesn't define "active status." Similarly, another case holds that an employee can't become "inactive" merely because he takes sick leave, or else the employee "would fall in and out of [insurance] coverage as that employee fell in and out of 'active employment.'"[30] The concern was that benefits might be too ephemeral if an employee lost those benefits each time he took a day off to deal with a cold. But that concern is irrelevant here. The Board didn't make a pilot's "active status" hinge solely on his leave status. In addition, that leave had to last at least six months. That provision guards against a situation in which a pilot's benefits are ephemeral due to his changing leave status.

Dunn has failed to show that he is entitled to summary judgment on his denial-of-benefits claim. Thus, the Court **DENIES** Dunn's motion for summary judgment as to that claim. But because the Board correctly interpreted the VSP, the Court **GRANTS** Southwest's motion for summary judgment as to Dunn's denial-of-benefits claim.[31]

---

[29] *Lickteig v. Bus. Men's Assur. Co. of Am.*, 61 F.3d 579, 585 (8th Cir. 1995).

[30] *Campbell v. Unum Life Ins. Co.*, No. CIV.A. 03-1445, 2004 WL 1497712, at *13 (E.D. La. July 2, 2004).

[31] Because the Board got it right, the Court need not examine whether the Board abused its discretion. *Singletary*, 828 F.3d at 347 (recognizing that, if an administrator correctly interprets a plan, "our inquiry ends").

7

## B. Breach-of-Fiduciary-Duty Claim

Dunn's breach-of-fiduciary-duty claim arises under 29 U.S.C. § 1132(a)(3). Southwest moves for summary judgment on that claim based on one argument. It argues that Dunn's "§ 502(a)(3) claim . . . [is] duplicative of [his] § 502(a)(1)(B) claim."[32] That argument fails for two reasons.

First, Southwest is correct that, "if a plaintiff can pursue benefits under [a] plan pursuant to § 1132(a)(1), there is an adequate remedy under the plan which bars a further remedy under § 1132(a)(3)."[33] But the Court has granted Southwest's motion for summary judgment on Dunn's claim for benefits under § 1132(a)(1). Because Dunn loses on that claim, there's no predicate claim of which his § 1132(a)(3) claim could be duplicative.

Second, Dunn's claim under § 1132(a)(3) is based, in part, on separate facts from his § 1132(a)(1) claim. For instance, Dunn alleges that "Chief Pilot Wahl . . . assure[d] Captain Dunn that he was eligible for the VSP."[34] To the extent that representation was wrong, Dunn contends that Southwest breached its fiduciary duty when Southwest "ma[de] false promises to Captain Dunn through Chief Pilot Wahl for which [*sic*] it was responsible."[35] That's not duplicative of Dunn's denial-of-benefits claim.

Dunn also moves for summary judgment on his breach-of-fiduciary-duty claim.

---

[32] Doc. No. 78 at 36 (citation omitted).

[33] *Innova Hosp. San Antonio v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 733 (5th Cir. 2018) (cleaned up).

[34] Doc. No. 1 at 10.

[35] Doc. No. 85 at 24.

Although his complaint references multiple theories supporting this claim—like his theory that Wahl misrepresented Dunn's VSP eligibility—Dunn presses only one in his motion: In denying his VSP application, he argues, Southwest "retroactive[ly] recharacteriz[ed]" Dunn's "sick leave into medical leave."[36] Southwest did so, the argument goes, "in order to prevent him from receiving the VSP benefit."[37] That argument fails for two reasons.

First, Dunn has provided no evidence that Southwest recharacterized his "sick leave" as "medical leave." Instead, Southwest denied Dunn benefits on the ground that he "began [his] leave of absence on May 26, 2020."[38] So Southwest didn't characterize Dunn's leave as "medical" or "sick"—it merely noted he was on leave.

Second, even supposing, for argument's sake, that Southwest mischaracterized the type of leave Dunn was on, Dunn hasn't shown that that mischaracterization resulted in the denial of benefits. As the Court has already found, Dunn's being on sick leave would not have rendered him "active" under the Board's proper interpretation of the VSP or under the CBA.

Accordingly, the Court **DENIES** Dunn's motion for summary judgment as to his breach-of-fiduciary-duty claim. The Court also **DENIES** Southwest's motion for summary judgment as to that claim.

---

[36] Doc. No. 76 at 31. Southwest asks the Court to strike that allegation and sanction Dunn. Doc. No. 88 at 32. But Southwest hasn't filed a motion concerning either request, so the Court will not rule on them.

[37] *Id.*

[38] Doc. No. 75 at 8; *accord id.* at 18.

## IV. Conclusion

The Court **GRANTS IN PART** Southwest's motion for summary judgment as to Dunn's denial-of-benefits-claim and **DENIES** Dunn's motion for summary judgment as to Dunn's denial-of-benefits-claim. The Court **DENIES IN PART** Southwest's motion for summary judgment as to Dunn's breach-of-fiduciary-duty claim and **DENIES** Dunn's motion for summary judgment as to Dunn's breach-of-fiduciary-duty claim.

**IT IS SO ORDERED** this 23rd day of January, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE